<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


SAMUEL YAROSH, JR., both          :
individually and derivatively
on behalf of Fox Development,     :
Inc.,
                                  :
          Plaintiffs,
                                  :    Civil Action No. 04-1816(JWB)

          v.                      :    **O P I N I O N**

CAROLE SALKIND, et al.,           :

          Defendants.             :

                                  :


**<u>APPEARANCES</u>**:

        MARK S. HALTZMAN & ASSOCIATES
        By:  Mark S. Hartman, Esquire
        411 Route 70 East, Suite 245
        Cherry Hill, New Jersey  08034

                - and -

        HALPERN & LEVY
        By:  Mark S. Halpern, Esquire
             Jonathan M. Peterson, Esquire
        GSB Building, Suite 400
        One Belmont Avenue
        Bala Cynwyd, Pennsylvania  19004
        (Attorneys for Plaintiff Samuel Yarosh
        and Fox Development, Inc.)

        HELLRING, LINDEMAN, GOLDSTEIN & SIEGAL
        By:  Jonathan L. Goldstein, Esquire
        One Gateway Center
        Newark, New Jersey  07102-5386
        (Attorneys for Defendants
        Carole Salkind and Steven Salkind)

STERN & KILCULLEN
By:  Jeffrey Speiser, Esquire
75 Livingston Avenue
Roseland, New Jersey  07068
(Attorneys for Defendant
Morton Salkind)

PORZIO, BROMBERG & NEWMAN
By:  Stephen C. Matthews, Esquire
100 Southgate Parkway
Morristown, New Jersey  07962-1997
(Attorney for Defendants
Peter Rosen and Rosen & Avigliano)

CONNELL FOLEY
By:  John P. Lacey, Esquire
85 Livingston Avenue
Roseland, New Jersey  07068-1765
(Attorneys for Defendants
Barbara Cohen, John Harris,
John Quinn, Dan Bates, InFrame, Inc.,
Ulysses Corporation, Sabal Industries,
Liberty Speedway, Maple Industries,
Giant Associates, Acme Associates, Inc.
and Leisure Heigh, Inc.)

TRAUB EGLIN LIEBERMAN STRAUS
By:  Jonathan S. Reed, Esquire
100 Metroplex Avenue
Edison, New Jersey  08817-5900
(Attorneys for Maller, Edidin &
Company and Ansel Edidin)


**BISSELL** <u>Chief Judge</u>

This matter comes before the Court on defendants' motion to dismiss numerous counts of plaintiff's Amended Complaint and plaintiff's motion for leave to file a second amended complaint. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1962 <u>et</u> <u>seq</u>., 18 U.S.C. § 1965(a), 18 U.S.C. § 1331, and supplemental jurisdiction over the state claims pursuant to 28

-2-

U.S.C. § 1367.  The Court heard oral arguments, with regard to both the above motions, on January 24, 2005 and directed the parties to submit supplemental briefs on each motion. Specifically, the Court ordered plaintiffs to submit an opposition brief to defendants' motion to dismiss and a reply brief in further support of plaintiffs' motion to file a second amended complaint.

<u>**FACTUAL and PROCEDURAL HISTORY**</u>

<u>**I.  Factual Background**</u>

Plaintiff's Amended Complaint alleges that Samuel Yarosh ("plaintiff" or "Yarosh") is "an experienced New Jersey real estate developer and builder" who in the 1990s took steps toward developing property located in Rockaway Township known as "Lot 48." (Am. Compl., ¶¶ 25-26, 39-54).  On May 1, 1995, Yarosh was introduced to defendant Morton Salkind, through his attorney defendant Peter Rosen.  (<u>Id</u>., ¶ 27).  After the meeting, Yarosh and Salkind orally agreed to be equal partners in the development of Lot 48.  (<u>Id</u>., ¶¶ 28, 55-64).  Yarosh alleges that Salkind stated that "they would form a business at a later date which would run the development of Lot 48 and of which they would be equal owners." (<u>Id</u>., ¶ 69).  Salkind also allegedly "offered to use an already existing corporation, Fox Development, to serve as the corporation to develop Lot 48." (<u>Id</u>., ¶ 70).

Originally, Yarosh and Salkind intended to develop Lot 48 as

-3-

a retail mall. (<u>Id</u>., ¶ 62).  In August 1995, however, Rockaway Township denied the necessary zoning change.  (<u>Id</u>., ¶ 89). Yarosh and Salkind then decided to develop Lot 48 as a senior housing development named "Fox Hills." (<u>Id</u>., ¶¶ 90-95).  From 1995 through 1997, Yarosh and Salkind moved forward in developing Fox Hills, which included purchasing necessary parcels of land, engaging engineers and architects to design the development, meeting with banks, preparing cost evaluations and securing financing.  (<u>Id</u>., ¶¶ 96-109, 110-125).

In 1997, Rockaway Township approved construction of Fox Hills development on Lot 48.  (<u>Id</u>., ¶ 125).  In May 1997, a sales office was opened to sell units of Fox Hills.  (<u>Id</u>., ¶ 126).  On September 7, 1997, construction of Fox Hills commenced.  (<u>Id</u>., ¶ 138).

Upon the commencement of the Fox Hills project, Yarosh and Salkind each agreed to receive an annual salary of $100,000. (<u>Id</u>., ¶ 139).  In 1999, Yarosh and Salkind each agreed to receive an annual salary of $125,000.  (<u>Id</u>., ¶ 145).  From 1999-2002, Yarosh continued to receive an annual salary of $125.000.  (<u>Id</u>., ¶¶ 146-48).  Salkind, however, allegedly received at least $250,000 in 2001 and $720,000 in 2002.  (<u>Id</u>., ¶¶ 147, 148).

Yarosh's individual claims against the Salkinds, excluding the Wage and Hour law claim, stem from his allegations that one or more of the Salkinds, with and without other co-defendants,

-4-

defrauded Yarosh of millions of dollars in profits from the Fox Hills development by:  (1) falsely promising to share those profits equally, while never intending to do so, and (2) misrepresenting to Yarosh that Fox Hills was not profitable, when it was profitable.  (Id., ¶¶ 24, 36, 38, 63, 80-82, 95, 102, 159-67, 173-74, 340).  Furthermore, Yarosh's derivative claims on behalf of Fox Development, Inc. and his individual claims of breach of fiduciary duty and loyalty allege that the Salkinds, with or without other co-defendants, by various schemes looted Fox Development, Inc. and all of its assets.[1]  (Id., ¶¶ 24, 36-37, 168-336, 340).

## II.  Procedural History

On April 19, 2004, Yarosh filed a 25-count complaint against 21 individual and corporate defendants.  On September 3, 2004, in response to several motions filed by defendants, Yarosh amended his complaint.  The Amended Complaint asserted two counts under the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO") and additional counts alleging several theories in state tort and statutory law.  Counsel for co-defendants Carole Salkind, Steven Salkind and Morton Salkind ("the Salkinds")

---

[1]    The Amended Complaint also alleges that defendants engaged in various schemes to "defraud the United States Government and the State of New Jersey from taxes owed on the profits earned from the senior housing development" and "to defraud" Rockaway Township from fees due from the development." (Am. Compl., ¶¶ 24, 38, 163, 167, 174).

separately filed a motion to dismiss counts I, II, III, IV, V, VI, VII, IX, XXIII, XXIV, XXV and XXVI of the Amended Complaint. Defendants Peter Rosen and the law firm of Rosen & Avigliano (the "Rosen defendants") filed a motion requesting that the Court dismiss all of the counts detailed in the motion submitted by the Salkind defendants to the extent that those counts are directed at the Rosen defendants.  The Rosen defendants also moved to dismiss counts X, XI and XXII of the Amended Complaint.  In addition, co-defendants John Harris, Barbara Cohen, John Quinn, Dan Bates, InFrame, Inc., Ulysses Industries, Giant Associates, Acme Associates, Inc. and Leisure Heights, Inc. (collectively the "Harris defendants") filed a motion to dismiss the Amended Complaint, also relying on the papers submitted on behalf of the Salkind defendants.  Co-defendants Maller, Edidin & Company, P.C. and Ansel Edidin (the "Edidin defendants") also filed motions to dismiss the counts in the Amended Complaint against them, namely counts I, IV, VI, XXIV, XXV and XXVI.

On October 12, 2004, plaintiff's counsel requested defendants' consent to file a second amended complaint, a request which was declined on November 15, 2004.  On November 18, 2004, plaintiff filed a motion for leave of court to file a second amended complaint, pursuant to Fed. R. Civ. P. 15(a), as an opposition to defendants' motion to dismiss.  The Second Amended Complaint has 33 counts.  On January 7, 2005, defendants filed

papers in opposition to plaintiff's motion for leave to amend the Amended Complaint.

At oral argument, on January 24, 2005, the Court ordered plaintiff to file an opposition brief to the defendants' motions to dismiss the Amended Complaint and a reply brief to defendants' motions in opposition to plaintiff's motion to file a second amended complaint. The Court also directed plaintiff to explain whether the complaint verification under Rule 23.1 had to encompass all of the allegations in the Amended Complaint, as opposed to the limited additional allegations not found in the original Complaint. Also the Court requested that plaintiff explain whether the verification could be "upon information and belief" or whether each and every allegation of the Amended Complaint had to be based upon the verifier's personal knowledge.

<u>**DISCUSSION**</u>

**I.  Standard Applied for Leave to File an Amended Complaint**

Federal Rule of Civil Procedure 15(a) provides that a party may amend his pleading once before a responsive pleading is served, or thereafter upon leave of court or on consent from his adversary. Fed. R. Civ. P. 15(a). Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Third Circuit, however, has articulated that leave to amend a complaint is not automatic, that district courts have discretion to deny leave to amend a complaint due to futility

-7-

among other reasons.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  The decision whether to grant leave to amend rests with the discretion of the trial judge and will be overturned on appeal upon the finding of an abuse of discretion.  Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir. 1998).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  Foman v. Davis, 371 U.S. 178, 182 (1962).

The Third Circuit has adopted a liberal approach to establish that "a particular claim will be decided on the merits rather than on technicalities."  Dole Arco Chem. Co., 921 F.2d 484, 486-87 (3d Cir. 1990).  Leave should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party by virtue of the allowance of the amendment[.]"  Foman, 371 U.S. at 82.  In addition, where an amendment to a complaint would be futile the Third Circuit has directed district courts to deny leave to amend.  Lorenz v. CSX Corp., 1 F.3d 1406, 1414(3d Cir. 1993).  The Third Circuit has articulated that "prejudice to the non-moving party is the touchstone for the denial of an amendment."  Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).

In the case at bar, the Court has not identified bad faith or undue delay on the part of plaintiff or any undue prejudice that defendants would suffer as a result of the filing of a second amended complaint.  Furthermore, the Court does not find that plaintiff's Amended Complaint is incurable.  An evaluation of plaintiff's Amended Complaint and basis for its dismissal leads the Court to conclude that plaintiff's Second Amended Complaint is permissible.

## II.  Verification of a Complaint in a Derivative Action Pursuant to Fed. R. Civ. P. 23.1

Under Federal Rule of Civil Procedure 23.1 a plaintiff in a derivative action must verify the complaint.  Fed. R. Civ. P. 23.1.  The purpose of the rule is to ensure that a derivative action has a basis in fact, and is not a strike suit.  Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 370-71 (1966).  "Although this requirement is largely a formality, the failure to verify a complaint is a ground for dismissal, although the court may grant the plaintiff leave to file an amended complaint."  5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 23.1.05 (3d ed., 2004).  "The verification requirement applies to successive, amended complaints relating to the same action.  Thus, the verification of an original complaint does not excuse the failure to verify an amended complaint."  (Id.)  Furthermore, to verify the complaint under Rule 23.1, "the plaintiff need not have direct knowledge of

the facts on which the complaint is based.  Thus, a plaintiff shareholder may verify a complaint by relying on truthful explanations of the case by others."  (Id., citing Surowitz, 383 U.S. at 370-71).

At oral argument the Court inquired whether plaintiff failed to meet the technical requirement of verification under Fed. R. Civ. P. 23.1.  The Surowitz Court held that non-compliance with the verification requirement is not grounds for dismissal, "where plaintiff has diligently investigated the possible charges prior to filing the Complaint."  Weisfeld v. Spartans Indus. Inc., 58 F.R.D. 570, 577 (S.D.N.Y. 1972).  The United States District Court for the district of Delaware has also concluded that a court may create a practical solution when plaintiff's failure to verify the complaint was merely a technical lapse.  Smachlo v. Birkelo, 576 F. Supp. 1439, 1442 (D. Del. 1983).  In the instant action, plaintiff "concedes that the verification attached to the original Complaint was inadequate and will attach a verification" to the Second Amended Complaint.  (Plaintiff Yarosh's Omnibus Br. at 6).  In light of the above, the Court will not dismiss the plaintiff's Second Amended Complaint due to his technical deficiency.[2]

─────────────

[2]   This District Court has previously allowed a plaintiff to satisfy the Rule 23.1 verification requirement by filing an affidavit verifying the complaint and serving it upon the officers of the defendant corporation within 10 days of the Court's order.  In re:  Orfa Sec. Litig., 654 F. Supp. 1449, 1458

### III. Standard Applied to Motion to Dismiss
###      Pursuant to Fed. R. Civ. P. 12(b)(6)

A district court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations.  In re:  Party City Sec. Litig., 147 F. Supp. 2d 282, 297 (D.N.J. 2001) (citing Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993)).  Granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) can result in a dismissal at an early stage of a case; therefore, a district court must accept "the allegations of [a] complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff."  Bd. of Trs. of Bricklayers v. Wettlin Assocs., Inc., 237 F.3d 270, 272 (D.N.J. 2001) (emphasis added).

A complaint may not be dismissed unless it appears beyond doubt that "'the facts alleged in the complaint, even if true, fail to support the claim.'"  (Id., quoting In re:  Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000)). Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness.  (Id.)

A court reviewing the sufficiency of a complaint has a limited role.  The issue is not whether the plaintiffs will

---

(D.N.J. 1987).

ultimately prevail, but whether they are entitled to offer evidence to support their claims.  (Id., citing Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000)).  A court may properly refer, however, to the factual allegations contained in other documents, such as documents referred to in the complaint and matters of public record, if the claims of the plaintiff are based upon those documents.  (Id., citing In re:  Burlington Coat Factory Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997)).  In other words, such documents must be "integral to or explicitly relied upon in the complaint."  (Id., quoting In re:  Burlington Coat Factory, 114 F.3d at 1426).

A.  Fed. R. Civ. P. 9(b)

When a plaintiff asserts a fraud claim the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) must be satisfied.  In re:  Burlington Coat Factory, 114 F.3d 1410, 1417 (3d Cir. 1997).  That rule requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b) also serves three purposes:  (1) ensuring that a plaintiff has investigated and reasonably believes a fraud has occurred;(2) providing adequate notice to defendants so that they can respond to the claim; and (3) protecting the reputation of defendants.  In re:  Burlington Coat Factory, 114 F.3d at 1417-18.  The Third Circuit, however, has also stated that "courts should be

-12-

'sensitive' to the fact that application of [Rule 9(b)] prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" <u>Shapire v. UJB Fin. Corp.</u>, 964 F.2d 272, 284-85 (3d Cir. 1992) (internal citation omitted). Also, the Third Circuit noted that under a relaxed application of Rule 9(b), "boilerplate and conclusory allegations will not suffice," and it directed plaintiffs to "accompany their legal theories with factual allegations that make their theoretically viable claim plausible." <u>In re:  Burlington Coat Factory</u>, 114 F.3d at 1418.

Although defendants' original motion to dismiss addressed a portion of the claims proffered in the Amended Complaint, this Court will analyze defendants' arguments and draw conclusions based on those claims which survive the Amended Complaint and are included in the Second Amended Complaint.

B.  <u>Application</u>

1.  <u>*Yarosh's Derivative Claims*</u>

As a matter of law, Federal Rule of Civil Procedure 23.1 requires that:

> [i]n a derivative action brought by one or more shareholders ... to enforce a right of a corporation ... the complaint ... shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share ... thereafter devolved on him by operation of law.

Fed. R. Civ. P. 23.1.  In other words, Rule 23.1 requires "stock

ownership in a corporation as the prerequisite for bringing a derivative action on its behalf." Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 735 (3d Cir. 1970). A shareholder's interest has been defined as "a proprietary interest in the corporate enterprise which is subject to injury through breaches of trust or duty on the part of the directors." Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 321 (1936). A shareholder can "step into the corporation's shoes and seek in its right the restitution he could not demand in his own." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 548 (1949). Standing arises from this proprietary interest created by the stockholder relationship and the benefits that plaintiff may acquire through holding stock of the corporation that is the real party in interest. Kauffman, 434 F.2d at 736. Accordingly, without a stockholder relationship or proprietary interest a plaintiff has no standing to bring a derivative suit. (Id.)

Defendants contend that the derivative counts, as pled, should be dismissed because Yarosh does not allege that he was a shareholder of Fox Development, Inc. Count IX of the Second Amended Complaint alleges that Salkind promised to Yarosh that he was an equal owner of Fox Development and that he would earn an equal share of profits, revenues, distributions and/or dividends from Fox Development. (Second Am. Compl., ¶ 478). Yarosh alleges that this misrepresentation was designed to "persuade

Yarosh that he was a 50% owner in Fox Development." (<u>Id</u>., ¶ 480). Furthermore, Yarosh specifically alleges that defendants "represented," "agreed," "confirmed," and "reasserted" to Yarosh that they were equal shareholders in Fox Development, Inc. (Second Am. Compl., ¶¶ 35, 80, 95, 102, 109, 111, 140, 159). As indicated above, the Court must view a plaintiff's allegations in a complaint as true. In the case at bar, the Court must determine whether the parties' conduct demonstrates Yarosh's shareholder status or reflects Yarosh's reliance on alleged misrepresentations that he would achieve such status. The Court concludes that plaintiff has proffered sufficient allegations to indicate that Yarosh was allegedly a shareholder or held a proprietary interest in Fox Development, Inc. Accordingly, he has standing to bring a derivative action on behalf of Fox Development, Inc.

### 2.  *Individual and Federal RICO Counts*

Yarosh also asserts derivatively, and on his own behalf, four federal RICO claims (Counts I through IV) and four state RICO claims (Counts V through VIII). Counts I through III allege violations of 18 U.S.C. § 1962(a), (b) and (c), respectively, by defendant Morton Salkind. Count IV alleges a conspiracy charge under 18 U.S.C. § 1962(d) against defendants Morton Salkind, Carole Salkind, Steven Salkind, Peter Rosen, Rosen & Avigliano, John Harris, Barbara Cohen, Maller Edidin & Co. and Ansel Edidin.

Under 18 U.S.C. § 1964(c), "any person injured in his business or property by reason of a violation of section 1962" of RICO may recover treble damages and attorneys' fees.  18 U.S.C. § 1964(c).  "In order to recover under § 1964(c), a plaintiff must plead (I) a section 1962 violation and (ii) an injury to business or property by reason of such violation."  <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1187 (3d Cir. 1993).  Under 18 U.S.C. § 1962(a), "a plaintiff must allege:  (1) that the defendant has received money from a pattern of racketeering activity; (2) [that the defendant] invested that money in an enterprise; and (3) that the enterprise affected interstate commerce."  (<u>Id</u>. at 1188).  In addition, "the plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves."  (<u>Id</u>.)  This District Court has dismissed claims brought under section 1962(a) of RICO, which fail to allege an injury to the plaintiff due to the investment in the enterprise of racketeering income.  <u>Princeton Economics Group, Inc. v. American Tel. & Tel. Co.</u>, 768 F. Supp. 1101, 1111, 1115 (D.N.J. 1991).

In the instant action, the Second Amended Complaint pleads, as required under section 1962(a), that Yarosh's injury results from the investment of the racketeering income into the asserted statutory enterprises distinct from an injury caused by the

predicate acts themselves.  Yarosh alleges that he individually
suffered the loss of millions of dollars in profits from the Fox
Hills project because defendants fraudulently withheld them.  In
addition, Yarosh asserts that he was harmed by the investment in
the statutory enterprises of the proceeds of the alleged
racketeering activity.  The Second Amended Complaint also states
that he was injured because funds were improperly diverted from
Fox Development, Inc. and were allegedly invested in the
statutory enterprises.  Further, Yarosh's Second Amended
complaint asserts with specificity that defendants acted
improperly by "diverting" these funds to other persons and
entities, altering the books of Fox Development, and "ultimately
invest [sic], directly or indirectly, some of the money diverted
from Fox Development into the purchase of real estate to the
detriment of Yarosh and Fox Development."  (Second Am. Compl., ¶
343).  Accordingly, an investment injury is pled in the Second
Amended Complaint.

### 3.  *Claims Against Defendant Edidin*

With regard to defendants Ansel Edidin and Maller, Edidin &
Co. ("Edidin"), the Second Amended Complaint asserts that Edidin
acted as the accountant for Salkind, a swell as for various other
businesses in which Salkind had an ownership interest, including
Fox Development, Inc.  (Second Am. Compl., ¶¶ 213-14).
Furthermore, Yarosh alleges that Salkind would frequently travel

to Chicago to meet with Edidin to prepare the year-end books, tax returns and financial statements for Fox Development Inc.  (Id.) In addition, the Second Amended Complaint alleges that Edidin, along with defendant Morton Salkind, knowingly filed fraudulent income tax returns with the United States Internal Revenue Service.  (Id., ¶ 345).

This Court, accepting these allegations as true, as required by Fed. R. Civ. P. 12(b)(6), determines that plaintiff has failed to allege that Edidin was aware of plaintiff's existence or his alleged shareholder interest in Fox Development, Inc.  Therefore, the claims set forth against Edidin in Counts II, IV, XXIV, XXV and XXVI of the Second Amended Complaint are dismissed.

As for the professional negligence claim against Edidin (Count XXXII in the Second Amended Complaint), Yarosh posits that Edidin failed to properly perform accounting services.  (Second Am. Compl., ¶¶ 614-621).  The Supreme Court of New Jersey has articulated that "one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession in good standing in similar communities."  Levine v. Wiss & Co., et al., 97 N.J. 242, 246 (1984).  The New Jersey accountant's liability statute, in pertinent part, provides:  "No accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting

service unless:

       (1)   The claimant against the accountant was the accountant's client; or

       (2)   The accountant:

              (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant,

              (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and

              (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service.

N.J.S.A. 2A:53A-25.  Here, Edidin would owe a duty to Yarosh if any of the above provisional categories were met.  Yarosh, however, has failed to plead the necessary facts required to support a claim of professional negligence.  The allegations in the Second Amended Complaint are insufficient to satisfy the statutory conditions of liability for accounting negligence against Edidin.  Therefore, Count XXXII of the Second Amended Complaint is dismissed.

>    *4.   Yarosh's Conspiracy Claim Against Defendants*
>         *in Violation of 18 U.S. . § 1962(d)*

Yarosh's federal RICO conspiracy claim under 18 U.S.C. § 1962(d) (Count IV) is based upon defendant Morton Salkind's alleged violations of 18 U.S.C. § 1962(a), (b) and (c).  The Third Circuit has stated that to properly plead a RICO conspiracy civil claim:

> a plaintiff must set forth allegations that
> address the period of the conspiracy, the
> object of the conspiracy, and the certain
> actions of the alleged conspirators taken to
> achieve that purpose.  Additional elements
> include agreement to commit predicate acts
> and knowledge that the acts were part of a
> pattern of racketeering activity.

Glessner v. Kenny, 952 F.2d 702, 714 (3d Cir. 1991).  The Third Circuit, however, has also articulated that district courts should "apply [Rule 9(b)] with some flexibility and should not require plaintiffs to plead issues that might have been concealed by the defendants."  Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (internal citation omitted).

Yarosh's Second Amended Complaint provides the identities of the participants to phone conversations and wire transfers of funds constituting wire and mail fraud.  Exact dates and times are not provided in the proposed Second Amended Complaint, but the general time of such events can be inferred through the details of each check identified in the proposed Second Amended

Complaint.  Therefore, defendants' motion to dismiss this claim, Count IV of the Second Amended Complaint, is denied.

### 5.  *N.J.S.A. 2C:41-2(a)*

This Court has stated that "the language of the New Jersey counterpart of 18 U.S.C. § 1962, N.J.S.A. 2C:41-2, is identical in all material respects except that the New Jersey Act is directed toward enterprises engaged in or the activities of which affect 'trade or commerce,' not interstate or foreign commerce." Kievit v. Rokeach, No. 86-2592, 1987 U.S. Dist. LEXIS 16131, at *20 (D.N.J. Oct. 29, 1997).  This Court has held that "[t]he virtual identity of the Federal and New Jersey RICO acts permits the Court to interpret them in a consistent manner." (Id. at *20-21).  As such, the Court will apply the above federal case law analysis to Yarosh's state RICO claims.  The Court concludes that such claims are sufficiently pleaded in the Second Amended Complaint which alleges that Yarosh suffered injury resulting from the investment of racketeering income.  Therefore, defendants' motion to dismiss this claim, Count V of the Second Amended Complaint, is denied.

### 6.  *N.J.S.A. 2c:41-2(d)*

Count VIII of the Second Amended Complaint is based upon the alleged violation of N.J.S.A. 2C:41-2(d):  conspiracy to violate N.J.S.A. 2C:41-2(a), (b) and (c).  (Counts V, VI and VII)  To properly plead a New Jersey RICO conspiracy a plaintiff:

-21-

> must show that a defendant agreed to
> participate directly or indirectly in the
> conduct of the affairs of the enterprise by
> agreeing to commit, or to aid other members
> of the conspiracy to commit, at least two
> racketeering acts ... and that he or she
> acted knowingly and purposefully with
> knowledge of the unlawful objective of the
> conspiracy and with the intent to further its
> unlawful objective.

State v. Ball, 141 N.J. 142, 180, cert. denied, 516 U.S. 1075 (1996).

Count VIII alleges that defendants acted with knowledge of the unlawful objective of the conspiracy and with the intent to further its unlawful objective. The Second Amended Complaint adequately pleads the requisite elements of plaintiff's causes of action under New Jersey law. Accordingly, defendants' motion to dismiss this claim, Count VIII of the Second Amended Complaint, is denied.

### 7. *Yarosh's Individual Claims of Breach of Fiduciary Duty, Loyalty and Conspiracy*

As stated above, the Second Amended Complaint properly alleges that he is a shareholder of Fox Development, Inc. Yarosh asserts that due to this status, defendants owed him a fiduciary duty. A fiduciary duty is owed to a shareholder, not to an employee. Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1158, 1162 (3d Cir. 1990). Yarosh adequately alleges that he is a shareholder. A duty of loyalty runs from an employee or officer or director, to the corporation.... Fields v. Thompson

-22-

Printing Co., Inc., 363 F.3d 259, 270-71 (3d cir. 2004).  As
such, Yarosh's individual claim for the breach of duty is
adequately pleaded in the Second Amended Complaint.  Therefore,
defendants' motion to dismiss these claims, Counts XXVI, XXVIII
and XXIX of the Second Amended Complaint, is denied.

### 8.  *New Jersey Wage and Hour Law:  N.J.S.A. 34:11-1*

The New Jersey State Wage and Hour Law imposes on employers
a statutory minimum wage rate for an employee[3] as well as an
overtime rate of one and one-half times the employee's regular
hourly rate for those employees who work in excess of 40 hours in
any week.  N.J.S.A. 34:11-56a4.  Here, the Second Amended
Complaint does not allege that Yarosh was paid less than the
minimum wage.  Furthermore, Yarosh does not allege a claim for
unpaid overtime.  Rather, Yarosh claims that he was not paid his
full salary.  Therefore, Yarosh fails to state a claim under the
New Jersey State Wage and Hour Law, and Count XXXI is dismissed.

### CONCLUSION

For the foregoing reasons, this Court grants plaintiff's
motion for leave to file a Second Amended Complaint, and has
evaluated defendants' motions as if directed to that pleading.
Plaintiff is ordered to file forthwith the verification
applicable to that Second Amended Complaint as required by Fed.

---

[3]     That rate is $5.15 per hour, effective January 21,
1999.

R. Civ. P. 23.1.  Furthermore, this Court grants defendants'
motion to dismiss the claims set forth against defendants Ansel
Edidin and Maller, Edidin & Co. in Counts II, IV, XXIV, XXV, XXVI
and XXXII of the Second Amended Complaint.  This Court denies
defendants' motion to dismiss the derivative claims in
plaintiff's Second Amended Complaint (Counts I through VIII,
Counts X through XXX, and Counts XXXII and XXXIII).  Also denied
is defendants' motion to dismiss the claims in Counts IV, V,
VIII, XXVI, XXVIII and XXIX of the Second Amended Complaint.
Defendants' motion to dismiss Count XXXI is granted.  Finally,
because the Second Amended Complaint withdraws the claim against
Carole Salkind for violation of 18 U.S.C. § 1962(a), defendants'
motion to dismiss this claim is dismissed as moot.


                                    /s/    John W. Bissell
                                         JOHN W. BISSELL
                                          Chief Judge
                                 United States District Court


DATED:  June 20, 2005


                                  -24-