NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAMUEL YAROSH, JR. Individually and derivatively on behalf of FOX DEVELOPMENT, INC., Plaintiff, v. CAROLE SALKIND, et al., Defendants. | **Hon. Dennis M. Cavanaugh** **OPINION** Civil Action No. 04-cv-1816 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

Before the Court are Defendants Morton Salkind ("Morton"), Carole Salkind ("Carole") and Steven Salkind's ("Steven"), (collectively, the "Salkind Defendants") motion for summary judgment to dismiss all counts against them; Defendants John Harris, Barbara Cohen, InFrame, Inc., Ulysses Corporation, Sabal Industries, Liberty Speedway, Maple Industries, Giant Associates, Acme Associates, Inc., and Leisure Heights, Inc.'s (collectively, the "Harris Defendants" and with the Salkind Defendants, "Defendants") motion for summary judgment on behalf of Fox Development Inc. ("Fox") to dismiss Plaintiff Samuel Yarosh Jr.'s ("Plaintiff") derivative action which alleges that the Harris Defendants defrauded Fox; and Plaintiff's motion for summary judgment asserting that there are no issues of material fact surrounding whether Plaintiff owned an equity interest as a partner, shareholder or otherwise in Fox, all pursuant to Rule 56(c). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After reviewing the parties' submissions, and based upon the following, it is the finding of this Court Defendants' motions for

summary judgment are **granted** and Plaintiff's motion for partial summary judgment is **denied**.

## I. BACKGROUND[1]

The primary issue for the Court's consideration on these motions pertains to whether Plaintiff is a fifty-percent shareholder, or owner of Fox and, therefore, has an enforceable ownership interest in Fox.

### A. Procedural History

Plaintiff filed his original complaint in April 2004 alleging, *inter alia*, that he and Morton agreed to join as equal partners in the development of 68 acres of property located in Rockaway Township, New Jersey along Route 80 and identified as block 11302, Lot 48 ("Lot 48"). Plaintiff repeatedly alleged that he and Morton had orally agreed to be "partners" in Fox, the corporation which would undertake the development. Plaintiff does not cite the existence of any written partnership or shareholder agreement between he and Morton. Nowhere in the original Complaint did Plaintiff include an allegation that Plaintiff was a shareholder of Fox. Plaintiff sought one-half of over thirty million dollars allegedly misappropriated from Fox and withheld from him.

In August 2004, the Salkind Defendants moved to dismiss the action because only a shareholder can bring a derivative claim. Their motion raised a second ground for dismissal of claims seeking recovery of Fox profits – the doctrine of *in pari delicto* – based on Plaintiff's assertions that he and Morton conspired to conceal Plaintiff's ownership interest to banks and the Rockaway Township Planning Board in violation of the law.[2]

---

[1]The facts set forth in this Opinion are taken from the parties' Rule 56.1 statements in their respective moving papers.

[2] "In pari delicto" derives from a Latin term meaning "[i]n a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one." McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 756 (3d Cir. 1990). The defense is grounded on two premises: first, that a court should not lend its good office to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality. See id.

In the face of these arguments for dismissal, before the Court could rule on the Salkind Defendants' motion, Plaintiff filed an amended complaint, revised in two ways: the Amended Complaint stripped the word "partner" or partnership from the allegations and Plaintiff recast his legal relationship with Morton by alleging that through an oral agreement the two became "equal shareholders;" and Plaintiff removed all mention of the alleged scheme with Morton to conceal his ownership interest in Fox. Therefore, the Court never ruled on the initial motion to dismiss.

In October 2004, the Salkind Defendants moved to dismiss the action because Plaintiff's allegation that he was a shareholder was not verified and the amended complaint contradicted the first complaint in which Plaintiff alleged he was a partner. Judge Bissell, however, upheld the second amended complaint and found that Plaintiff properly plead that he was a shareholder.

On March 29, 2006, Magistrate Judge Mark Falk entered a Bifurcation Order providing that (1) the initial phase of discovery "would solely address the question of whether plaintiff either owned an equity interest in [Fox] as a shareholder, partner or otherwise, or was somehow cheated out of such an interest;" and (2) discovery related to alleged diversion of Fox funds, including discovery of Fox's financial transactions, would await a second phase of discovery, if necessary.

Pursuant to the Bifurcation Order, the first phase of discovery is complete. The Salkind Defendants move for summary judgment to dismiss all claims against them because (1) there is no genuine issue of material fact that Plaintiff was <u>not</u> a shareholder in Fox; and (2) Plaintiff cannot pursue a claim based on an alleged scheme with Morton to conceal his ownership interest as such a claim is precluded by the defense of *in pari delicto*. Plaintiff moves for summary judgment to assert that there is no issue of material fact surrounding whether he was a shareholder of Fox, urging this Court to find that he and Morton had a valid shareholder agreement with clear terms. The Harris Defendants move for summary judgment to dismiss all claims against them because they allege that

Plaintiff, not being a shareholder, does not have standing to initiate a derivative claim.

**B. <u>Factual Background</u>**

Plaintiff testified that his claims in this action are based entirely on an oral agreement reached between he and Morton at the Plaza Diner in Secaucus, New Jersey in May 1995. The intended purpose of this meeting was to discuss a plan to develop a retail mall on Lot 48. Plaintiff alleged in the original complaint that at the end of the Secaucus meeting, the two were to be equal partners in the development of the lot; the amended complaint alleges that at the end of this meeting the two were to be "equal shareholders in Fox Development which had no other purpose but the development of Lot 48 as a retail mall." After Fox's retail mall plan was rejected by the Rockaway Township Planning Board, however, Fox successfully developed the lot into senior housing.

The alleged partnership agreement was never put in writing. Plaintiff was inconsistent as to any terms allegedly agreed upon at the May 1995 meeting. After asserting that Morton had simply agreed to a "50/50" partnership without elaboration, upon further questioning, Plaintiff said "I took it as gross profits," meaning "before taxes." Later Plaintiff indicated that the agreement was for profits after taxes. Ultimately, Plaintiff conceded that he and Morton did not discuss that "minute detail" of whether "50/50" profits referred to net or gross profit. Furthermore, Plaintiff admits that the two did not discuss how losses would be shared. Plaintiff was never listed as an owner of Fox Development. Plaintiff loaned $250,000.00 to Fox, which he concedes was later repaid with interest. Plaintiff urges this Court to determine that the $250,000 was paid as a shareholder loan to Fox. Despite being an alleged partner, Plaintiff dropped off the company car after his term as a construction manager for Fox ended. Prior to amending the complaint, Plaintiff repeatedly testified that the agreement was for Morton and Plaintiff to be partners, not shareholders.

Fox was a pre-existing entity that Morton selected to use for the Lot 48 development. Fox was established on September 9, 1993, with the issuance of 1000 shares to Carole, as the sole shareholder, evidenced by a Stock Certificate, with each of the Salkinds designated as officers, and Morton as sole Director.

Plaintiff admits the following: Plaintiff never asked for or received stock certificates in Fox. Plaintiff knew that Carole was the sole shareholder of Fox. Plaintiff understood that the title and other documents, including purchase agreements, indicate Carole as the sole owner of Fox. Plaintiff did not discuss transfer of shares with Morton at the time of their initial meeting in May 1995 when the alleged partnership agreement was made. Morton never referred to Plaintiff as a shareholder. Plaintiff never attended a Fox board of directors meeting or had check signing authority. In various documents completed and signed by Plaintiff, including tax returns, documents filed with various government agencies, and an information subpoena, Plaintiff never asserted that he had any interest, ownership or otherwise, in Fox.

At his May 2007 deposition, Plaintiff testified that, together with Morton, he deliberately concealed his purported ownership interest in Fox to avoid political opposition to the project. In addition to his sworn statements from earlier lawsuits, Plaintiff testified that he knew Fox's land use applications to Rockaway Township, which required by law to disclose corporate ownership of the applicant, identified Carole as Fox's sole owner and did not mention Plaintiff's purported "ownership."

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex

Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. See id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III. DISCUSSION

### A. Harris Defendants' Motion for Summary Judgment

Plaintiff brings this cause of action against the Harris Defendants derivatively, on behalf of Fox, alleging common law fraud, unjust enrichment, conversion, and breach of fiduciary duty. Plaintiff claims he is entitled to bring these causes of action as a shareholder of Fox. The Harris Defendants assert that since Plaintiff testified at his deposition that he was never a shareholder in Fox, that he never attended a board of directors meeting for Fox and that he never saw a corporate resolution awarding him any shares in Fox, that Plaintiff does not have standing to bring suit on Fox's behalf. Further, Plaintiff admitted that he was aware that Carole was the only shareholder in

Fox and that no shares of Fox were ever issued to him. Plaintiff was never listed as an owner of Fox. As mentioned above, Plaintiff loaned $250,000.00 to Fox, which he concedes was later repaid with interest. Plaintiff urges this Court to determine that the $250,000 was paid as a shareholder loan to Fox, however, there is no documentation citing same. The Harris Defendants point out, and Plaintiff offers no evidence to rebut, that the $250,000 was not meant to purchase a propriety interest in Fox.

Further, Plaintiff alleges that he testified that he was not a shareholder of Fox because he did not know the difference between being the terms "shareholder" and "partner". Plaintiff asserts that it is commonplace to refer to oneself as a partner in a corporation when in fact, one is a shareholder. (Pl.'s Br. p. 16-17). Plaintiff, however, repeatedly testified that he was not a shareholder, so by Plaintiff's logic, he was testifying that he was not a partner or shareholder of Fox. Plaintiff's argument that he did not understand the difference between the terms shareholder and partner does not void his admission that he was not a shareholder/partner of Fox.

Plaintiff lacks standing to bring a derivative action on behalf of Fox. As Fed. R. Civ. P. 23.1 states:

> In a derivative action brought by one or more shareholders...the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors, or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

As a result, one who does not own shares in a corporation is not qualified to bring a derivative action on its behalf. Kaufmann v. Dreyfus Fund, Inc. 434 F.2d 727, 735 (3d. Cir. 1970), cert denied, 401

U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d. 323 (1971), see also Furst v. Feinberg, No. 02-2357, 2002 WL 31831545 (3d. Cir. 2002). As Plaintiff has repeatedly admitted, he was never a shareholder of Fox. Plaintiff fails to show that he had an ownership/proprietary interest in Fox, so the requisite standing to bring a derivative action is lacking.

Additionally, the Harris Defendants move to have the claims against Acme Associates, Inc. ("Acme") dismissed because Plaintiff has failed to plead a claim which would entitle him to relief. Plaintiff has not asserted any claims against Acme, but rather, has only named Acme in the Amended Complaint twice, accusing Acme of being the recipient of fraudulent payments, or being paid false expense checks. (Complaint, ¶¶218, 305). Plaintiff does not refute the Harris Defendants' argument that Plaintiff has not made a claim against Acme. Therefore, the Harris Defendants' motion for summary judgment is **granted**.

**B. Salkind Defendants' Motion for Summary Judgment**

The Salkind Defendants move for summary judgment asserting that: (1) Plaintiff, under oath in prior lawsuits, repeatedly disavowed any ownership interest in Fox; (2) Plaintiff never asserted an interest in Fox on any document, including tax returns, financial statements, personal loans, etc.; (3) Plaintiff knew and never objected to Fox reporting Carole as sole owner of Fox in submissions to government agencies, planning board applications and tax returns, when Plaintiff asserted a 50% ownership interest in the company; and (4) Plaintiff's recollection of the oral agreement which allegedly took place in 1995 has changed repeatedly. Based on these assertions, the Salkind Defendants argue that Plaintiff has not set forth a genuine issue of material fact to rebut their motion for summary judgment.

Rather, the Salkind Defendants argue that Plaintiff is attempting to create genuine issues of material fact by contradicting his own sworn statements that he was neither a shareholder nor had

any other ownership interest in Fox. Further, the Salkind Defendants establish, and Plaintiff agrees, that there was never a written word regarding Plaintiff's alleged ownership interest in Fox. The sole basis for Plaintiff's assertion that he has a 50% ownership interest in Fox is an alleged oral agreement which took place in 1995 between he and Morton; this alleged agreement was never memorialized and Plaintiff repeatedly admitted that he had no ownership interest in Fox. Specifically, Plaintiff has stated under oath that his relationship with Fox was that of an employer/employee and that his assets in Fox did not include ownership interests. Additionally, Plaintiff failed to list Fox when he was subpoenaed to list his interest in any business and the nature of such interest. Plaintiff fails to rebut any of these arguments by raising a genuine issue of fact.

Plaintiff's most recent admissions that he is not and never was a shareholder in Fox is consistent with his original complaint. Also, Plaintiff has disavowed any ownership interest in Fox, and shall not be permitted to vacillate regarding these sworn statements for the purpose of surviving summary judgment at this stage according to Magistrate Judge Falk's Bifurcation Order. As such, the Salkind Defendants' motion for summary judgment is **granted**.

**C. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff requests that this Court enter an Order finding that, as a matter of fact and law, Plaintiff owns a 50% interest in Fox, and as such, has standing to bring all of the derivative actions on behalf of Fox set forth in the Amended Complaint. As stated above, this Court finds that Plaintiff is/was not a shareholder of Fox, as Plaintiff held no stock certificates and repeatedly confirmed, under oath, that he was aware that Carole was the sole owner of Fox.

Defendants are correct that Plaintiff's motion for partial summary judgment argues two main points; one, that Defendant Morton Salkind has referred to Plaintiff as his partner, and two, that this Court should draw an adverse inference against Defendants because Ansel Edidin ("Edidin"), Fox's

former accountant, invoked his Fifth Amendment privilege at his deposition in response to questions about the $250,000 loan from Plaintiff to Fox as Fox and the Salkind Defendants were under a federal criminal investigation regarding their accounting practices. Edidin refused to admit or deny that the $250,000 payments from Plaintiff were treated as shareholder loans on Fox's tax returns. Plaintiff urges this Court to infer that because Edidin, a non-party, invoked his Fifth Amendment privilege, that the subject $250,000 loan should be treated as a shareholder loan, and this Court will do no such thing. No inference will be drawn from Edidin's invocation of his Fifth Amendment privilege that Plaintiff gave Fox a shareholder loan. The subject loan was not itemized on any Fox tax return, so no inference will be made that the subject $250,000 loan should have been included as such. This Court has already found that Plaintiff is not and was never a shareholder of Fox. Plaintiff has not established facts rebutting this Court's finding of same; this Court will not enter an Order finding that Plaintiff owned a 50% interest in Fox. Therefore, Plaintiff's motion for partial summary judgment is **denied**.

## IV. CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' motions for summary judgment are **granted** and Plaintiff's motion for partial summary judgment is **denied.** An appropriate Order accompanies this Opinion.

/s/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date: August 14, 2008
Orig.: Clerk
cc: Counsel of Record
The Honorable Mark Falk, U.S.M.J.
File